699 P.2d 1078

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Jerry GUTIERREZ, Defendant-Appellant.**

**No. 7862.**

Court of Appeals of New Mexico.

April 4, 1985.

Certiorari Denied May 8, 1985.

Paul G. Bardacke, Atty. Gen., Bill Primm, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

William W. Deaton, Deaton & Twohig, Albuquerque, for defendant-appellant.

## OPINION

ALARID, Judge.

Defendant, Jerry Gutierrez, brings this interlocutory appeal from the trial court's denial of his motion to suppress evidence discovered during searches of defendant's business and residence in Guadalupe County. The searches involved here were conducted by deputy sheriffs from Curry County in Guadalupe County. Defendant asserts that the Curry County deputies were without authority to obtain and execute search warrants in Guadalupe County. We disagree and affirm the trial court's finding that statutory authority exists to allow a sheriff to serve process in any county in the state. Determining this issue dispositive, we do not consider the other issues raised.

## FACTS

On March 9, 1983 two Curry County deputy sheriffs traveled from Clovis, in Curry County, New Mexico, to Santa Rosa, in Guadalupe County, New Mexico, to execute an arrest warrant and obtain and execute a search warrant. Upon arrival in Santa Rosa, the deputies contacted a state police officer assigned to the area, who assisted them but did not accompany them to defendant's place of business or to the local magistrate's office where the search warrant was issued. After obtaining the search warrant, the deputies, still unaccompanied by local law enforcement personnel, proceeded to defendant's business premises, arrested him, served the search warrant, and commenced a search of the premises. There is a dispute about when the local Chief of Police, Horatio Chavez, arrived at the scene of the search, but the trial judge found that the search had commenced before he arrived. On the same day, Deputy Spear obtained a search warrant from a district judge allowing him to obtain a handwriting exemplar from defendant.

In addition, on March 9, 1983, Curry County Deputy Sheriffs Lyle Stevens and John Mares traveled to Santa Rosa where, unaccompanied by any other law enforcement officer, they obtained a search warrant for defendant's residence from the local magistrate. State Police Officer Russell Kirkpatrick showed the deputies where the residence was located, and after the search warrant was obtained, accompanied the deputies in their attempt to find defendant's brother or wife for assistance in entering the locked residence. The wife was not found, and the brother had no keys. The officers then returned to the residence a few minutes before Officer Kirkpatrick. By the time Officer Kirkpatrick arrived, the two deputies were inside the residence, and had already conducted a walk through and noticed certain business papers in a bedroom and an office area.

Defendant, in his motion to suppress, seeks to exclude the evidence seized as a result of the two search warrants. The

trial court denied the motion and allowed interlocutory appeal. This court denied the interlocutory appeal, but on certiorari the supreme court ordered us to grant defendant's interlocutory appeal on the search claim.

## DISCUSSION

### MAY A DEPUTY SHERIFF FROM ONE COUNTY EXECUTE A SEARCH WARRANT IN ANOTHER COUNTY WHERE NO LOCAL OR STATE LAW ENFORCEMENT OFFICIAL PARTICIPATES OR ACCOMPANIES HIM IN APPLYING FOR THE SEARCH WARRANT, OR PARTICIPATES AT THE TIME THE WARRANT IS SERVED AND THE SEARCH IS COMMENCED?

▮ The question raised in this case is one of first impression in New Mexico. The closest New Mexico case on this issue is *State v. Wise*, 90 N.M. 659, 567 P.2d 970 (Ct.App.1977). In that case, Albuquerque police officers conducted a search in Lea County. The state contended that Albuquerque police officers did have authority to execute search warrants in Lea County. After reviewing statutes which contain geographical references and references to an officer's authority within the geographical area, this court held that it was unnecessary to decide whether the statutes authorized Albuquerque officers to conduct searches in Lea County. The transcript revealed that the Albuquerque officers were working with the Lea County Sheriff and the Hobbs Police Department. One of the officers in charge of the search was a Hobbs police officer. A deputy sheriff and two or three Hobbs police officers participated in the search. Accordingly, it was "immaterial whether the Albuquerque police officers had authority to execute the warrant because other officers, present and participating, did have the authority." 90 N.M. at 661. In this case, we address only the question of authority. Finding that discussion dispositive, it is not necessary to consider whether other authorized officers were "present and participating" in this case.

Defendant relies on the general rule that, at common law, the powers of a sheriff and his deputies are restricted to their counties unless they are given additional jurisdiction by statute. New Mexico appears to have followed this rule. *See Geck v. Shepherd*, 1 N.M. 346 (1859). *Cf. Wise.* Thus, the question to be answered is what extraterritorial powers have been given to county sheriffs by statutes.

In *Wise*, the state contended that police officers were authorized to serve search warrants outside of their jurisdictions because Laws 1967, ch. 245, which directed that search warrants be directed to officers in the county, had been repealed. This court found the argument unpersuasive because there were other statutes which appeared to limit certain officers' powers to specific geographical boundaries. However, it is significant that *Wise* was concerned with municipal police officers. The duties of such officers, in serving writs and processes, are circumscribed by county boundary. NMSA 1978, § 3–13–2(A)(2). The same is not true for sheriffs.

A review of applicable statutes [1] indicates that the municipal police officers in

---

1. A list of applicable statutes, together with a synopsis, follows:

Section 3–13–2(A)(1): Municipal police officers shall execute and return all writs and processes as directed by the municipal judges.

Section 3–13–2(A)(2): Municipal police officers shall serve writs and processes in any part of the county where the municipality is situated.

Section 3–13–2(A)(3): Municipal police officers shall suppress riots and arrest people within the municipality.

Section 3–13–2(B): In the discharge of his duties, a municipal police officer has the powers of a sheriff.

NMSA 1978, Section 4–41–2 (Repl.Pamp. 1984): A sheriff is the conservator of the peace within his county.

NMSA 1978, Section 4–41–9 (Repl.Pamp. 1984): A deputy may do what a sheriff may do.

NMSA 1978, Section 4–41–12 (Repl.Pamp. 1984): A sheriff may enter other counties to make arrests.

NMSA 1978, Section 4–41–13 (Repl.Pamp. 1984): A sheriff may execute the process of the probate judges in the respective counties.

NMSA 1978, Section 4–41–14 (Repl.Pamp. 1984): A sheriff shall serve and execute all pro-

*Wise* were strictly circumscribed by county boundary in what they could do. On the other hand, the sheriff is so circumscribed if he is acting in a general capacity as a conservator of the peace, serving probate court process, or tracing or discovering stolen property. NMSA 1978, §§ 4–41–2 and –13 (Repl.Pamp.1984); NMSA 1978, § 29–1–2 (Repl.Pamp.1984). The comparison between Section 4–41–13 and NMSA 1978, Section 4–41–14 (Repl.Pamp.1984) should be noted. The former only allows sheriffs to serve probate court process if issued by the probate court in their counties. The latter allows sheriffs to serve the process, orders, and writs of magistrate courts without limitation. Section 4–41–14 is part of an act, another portion of which is compiled at NMSA 1978, Section 31–1–4(E) (Repl.Pamp.1984). N.M.Laws 1975 ch. 242. The latter section allows police officers to serve all non-municipal court process in any county of the state. *Wise*, dealing with municipal police officers, is not controlling in this case. Sections 4–41–14 and 31–1–4(E) allow sheriffs to serve process in any county of the state.

■ The next question which must be addressed is whether a search warrant is process within the meaning of Section 31–1–4(E). As the state points out, *State v. Welch*, 37 N.M. 549, 25 P.2d 211 (1933), appeared to refer to a search warrant as process. In *Welch*, the court initially noted that an investigating party had no search warrant or arrest warrant, and subsequently stated, "Admittedly the officers were armed with no process entitling them to enter." 37 N.M. at 551, 556, 25 P.2d 211. Although *State ex rel. Dresden v. District Court of Second Judicial Dist.*, 45 N.M. 119, 112 P.2d 506 (1941), equated process with summons in interpreting the statute

there at issue, it also noted that process could include writs, warrants, and orders, depending upon the context of the statutes in which the word appears. Reviewing all of the above statutes, it is clear that process was meant to be the generic term, including summons, writs, warrants, and orders. *See* particularly Section 4–41–14, directing sheriffs to serve and execute all such processes directed to them by magistrate courts.

Moreover, the state has cited a number of cases standing for the proposition that a search warrant is "process" within the meaning of statutes or constitutional provisions dealing with process. *State v. Hennessee*, 232 Kan. 807, 658 P.2d 1034 (1983); *Smith v. Commonwealth*, 504 S.W.2d 708 (Ky.1974); *Boring v. State*, 253 So.2d 251 (Miss.1971), *cert. denied*, 405 U.S. 1040, 92 S.Ct. 1310, 31 L.Ed.2d 581 (1972); *People v. Beard*, 77 Misc.2d 927, 353 N.Y.S.2d 999 (1974); *White v. State*, 81 Okl.Cr. 399, 165 P.2d 151 (1946). In any event, defendant does not contend that a search warrant is not process within the meaning of either Section 4–41–14 or Section 31–1–4(E). Rather, he contends that a sheriff's only extraterritorial powers are those stated in NMSA 1978, Section 4–41–12 (Repl.Pamp. 1984). He argues that none of the statutes relating to sheriffs, particularly Section 4–41–14 or 31–1–4(E), expressly gives sheriffs the power to execute search warrants outside of their counties. Defendant also argues that Section 31–1–4(E) gives only police officers authorized to serve process outside of a county the power to serve process outside of the county.

With regard to defendant's argument, it is clear that Sections 4–41–14 and 31–1–4(E) were intended to allow sheriffs to have

cesses, writs, and orders directed to him by the magistrate courts.

NMSA 1978, Section 29–1–1 (Repl.Pamp. 1984): It is the duty of sheriffs, constables, and peace officers to investigate all violations of the law in the state.

NMSA 1978, Section 29–1–2 (Repl.Pamp. 1984): It is the duty of sheriffs and constables in the respective counties to trace and discover stolen property.

NMSA 1978, Section 29–2–18 (Repl.Pamp. 1984): State police are the conservators of the peace throughout the state.

NMSA 1978, Section 31–1–4(E) (Repl.Pamp. 1984): Except for municipal court actions, all police officers authorized to serve process issued in any action have jurisdiction to serve process in any county of the state.

more extraterritorial jurisdiction than that stated in Section 4–41–12. The courts of at least one state have expressly so ruled based on statutes similar to ours. *State v. Lamb*, 209 Kan. 453, 497 P.2d 275 (1972), *overruled on other grounds, State v. Jacques*, 225 Kan. 38, 587 P.2d 861 (1978). It was only when subsequent legislation narrowed the extraterritorial powers of sheriffs that the Kansas courts ruled that sheriffs' powers were more circumscribed by geographical boundary. *See State v. Hennessee.*

With regard to defendant's last argument, defendant would read the words "authorized to serve process issued in any criminal action" out of the statute. Defendant in effect contends the phrase "authorized to serve process issued in any criminal action" includes only those police officers otherwise authorized to serve process outside the county. This interpreta-

tion requires us to read words into the statute or ignore words that are present. This we need not do, since the statute makes sense as written. *See State ex rel. Barela v. New Mexico State Board of Education*, 80 N.M. 220, 453 P.2d 583 (1969).

Therefore, the order of the trial court denying defendant's motion to suppress is affirmed and the case remanded to the district court for trial.

IT IS SO ORDERED.

NEAL and MINZNER, JJ., concur.